UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| CARL SOELLINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:06-CV-257 |
| | ) | |
| JASON FUHRMAN, MICHAEL DELONG, and CITY OF FORT WAYNE | ) ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

On June 30, 2006, the Plaintiff, Carl Soellinger, filed his Second Amended Complaint alleging that the Defendants, Fort Wayne Police Officers Jason Fuhrman and Michael Delong, violated his constitutional rights by using excessive force against him. The Defendants moved for summary judgment on February 12, 2007. For the reasons stated below, the Defendants' motion is granted.

**A.      Summary Judgment Standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). After adequate time for discovery, summary judgment must be

given against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as

otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Only material facts will preclude summary judgment; irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson*, 477 U.S. at 248–49. If there is no genuine issue of material fact, the only question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wisc. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

**B.     Material Facts**

Viewing the facts in the light most favorable to the Plaintiff, the Court accepts the following facts as true for the purpose of ruling on this motion for summary judgment.

3

On April 16, 2005, at about 5:45 p.m., Soellinger was at his home on 2937 Westbrook Drive, when Allen County Community Corrections officer Frank Suarez arrived to question Soellinger about the whereabouts of his son, Eric. Eric was a participant in the Community Corrections House Arrest Program at the time, and Soellinger had dropped him off at Community Corrections in the morning. Soellinger thought Eric would return sometime after 5:35 p.m. Eric suffers from a disorder causing seizures, and Soellinger was concerned about Eric's well-being.

Suarez asked Soellinger several times where Eric was, and Soellinger replied several times that he was on his way home, that he should be home any minute if he took the bus, and that he might have walked home. During this time, Suarez searched the apartment. He looked in the bathroom, bedroom, and closets, and kept asking Soellinger where Eric was. He would speak into his walkie talkie, and Soellinger states that he was reporting his movements as he searched the apartment. Soellinger did not know to whom Suarez was talking.

At some point, Suarez told Soellinger to put his hands down. Soellinger replied that his hands were down. Suarez told him again to put his hands down, and Soellinger then put his hands in his pocket. Suarez told him to take his hands out of his pocket. Suarez yelled something into his walkie talkie, and Soellinger heard a voice ask if "they needed to come up." (Soellinger Dep. 34, DE 15.) Suarez declined. Soellinger described Suarez as having been very skittish.

Soellinger became "disgusted" with Suarez, took his hands out of his pocket, and sat down on his couch. (Soellinger Dep. 34, DE 15.) Suarez came up to Soellinger and stuck his walkie talkie in his face and said "You raise your hands at me, again, I am going to pepper spray you." (Soellinger Dep. 34, DE 15.) Soellinger responded that he did not have his hands up, and

4

Suarez responded by handcuffing one of Soellinger's hands and spraying him with pepper spray. While spraying Soellinger, he threw him into the table and called for back-up. Soellinger hit his head on the table and blacked out for a moment. He remembers hearing his neighbor, Sharon Mahoney, saying something about Soellinger's heart condition to Suarez. After hearing about his condition, Suarez stood up off of Soellinger's back and helped him to sit down on the couch. Both of his hands were now handcuffed.

At some point after he was helped onto the couch, he regained his senses and noticed two other officers standing in the doorway, about eight feet from Soellinger's couch. The two officers were Defendants Jason Fuhrman and Michael Delong. Soellinger states that Suarez falsely told the officers that Soellinger had struck, or grabbed, him. (Second Am. Compl. 3, DE 1; Pl. Ex. C, Defs. Answers Interrogs. 2–3, DE 20-4.) There is evidence that sometime while the officers were present, Delong pushed Soellinger's head, but Soellinger testified that Delong used no improper force against him.[1]

While Suarez, Fuhrman, and Delong were conversing, Soellinger tried to talk to them, telling them they needed to go look for his son. Soellinger was excited because he was

---

[1] In response to an interrogatory, Delong said after Suarez told him that Soellinger had grabbed him, Soellinger appeared as if he was going to spit on Delong. Delong pushed on Soellinger's back to avoid being spit on. Soellinger testified at his deposition that Delong used no improper force against him. Soellinger submitted an affidavit stating that Delong pushed his head for no reason. Soellinger's admission that Delong used no improper force is accepted as true, as he does not allege in his affidavit that Delong's force was improper, or otherwise give a reason for the Court to ignore his deposition statement that Delong used no improper force. *See Cherry v. Am. Tel. & Tel. Co.*, 47 F.3d 225, 232 (7th Cir. 1995) (holding that where a Plaintiff has attempted to "manufacture an issue of fact by adding the gloss of a subsequent affidavit to an earlier deposition," the added gloss has no effect.)

Soellinger also does not argue that Delong's use of force was excessive; the focus on Soellinger's argument is that Delong is liable as a bystander.

5

concerned about his son and because of being pepper sprayed. He stood up from the couch and yelled, "You guys need to go up there and check that bus station. My son may have had a [g]rand [m]al seizure." (Soellinger Dep. 78–79, DE 15.) Fuhrman responded by running over to Soellinger and shoving Soellinger's face into the couch: "The shorter of the two officers that had come up there, ran over, shoved my face, my chest into the back rest of the couch and told me, swore at me, told me to keep my mouth shut, shut my mouth." (Soellinger Dep. 80, DE 15.) In response, Soellinger told Fuhrman that "You guys need to quit cussing at me," and that they should listen to him so they knew what was going on.  (Soellinger Dep. 80, DE 15.) Fuhrman did not hold Soellinger in the couch face first, but he had his weight on Soellinger for about a minute. At some point during the encounter, Fuhrman pulled Soellinger's arm behind him, aggravating his shoulder.[2] He also testified that his wrists hurt and he felt discomfort in his chest.[3] Fuhrman then pushed up off of Soellinger and went back to stand by the other officers near the doorway.

Soellinger was first taken to Allen County Lockup. He was then taken to the hospital to

---

[2]Soellinger greatly expands on his deposition testimony in an affidavit, stating that Fuhrman overextended his arm and squeezed the handcuffs tighter, causing severe pain, numbness, and poor circulation to his right arm. Defendants filed a motion to strike this affidavit as contradicting his deposition testimony. The Court agrees. Soellinger's affidavit contradicts what he testified to in his deposition, as he made no mention of numbness, poor circulation, or severe pain when asked about the physical problems caused by Fuhrman's use of force. Soellinger gives no explanation for the contradiction, and so, the affidavit statements are not accepted as true. *Cherry*, 47 F.3d at 232 (holding that where a Plaintiff has attempted to "manufacture an issue of fact by adding the gloss of a subsequent affidavit to an earlier deposition," the added gloss has no effect.)

[3]Defendants Memorandum in support of their Motion to Strike states that Soellinger testified that his wrists hurt and he felt discomfort in his chest on pages 88–89 of his deposition, but those pages were not submitted into evidence. The Plaintiff also cites to those pages in his response to the motion to strike. The Court will accept the statement as true.

make sure the night's events did not adversely affect his heart condition. He was charged with Battery to a Law Enforcement Officer and Resisting Law Enforcement-Physical, but was allowed to enter the pre-trial diversion program.

**C.     Excessive Force Analysis**

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chi.*, 215 F.3d 758, 773 (7th Cir. 2000). If an officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," the officer's actions do not constitute excessive force. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "Of course, the 'calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Fox v. Pittinger*, 2005 WL 1712216, *8 (N.D. Ind. 2005) (quoting *Graham v. O'Connor*, 490 U.S. 386, 396–97 (1989)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). A court must look to the following factors when determining whether the amount of force used is reasonable: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

7

whether he is actively resisting arrest or attempting to evade arrest by flight." *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003). The reasonableness of force is a legal issue, as juries do not determine what limits the Constitution places on official conduct. *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003).

Here, at the moment Fuhrman ran over to Soellinger and pushed him down onto the couch, there is no evidence that Fuhrman knew Soellinger was not a threat. The circumstances would appear somewhat tense or uncertain to a reasonable officer in Fuhrman's position, and it is from Fuhrman's point of view that the Court judges the reasonableness of his force. He had just come into the apartment, and had not seen Soellinger's previous interaction with Suarez. Fuhrman knew that Suarez had called for backup, and Suarez told him that Soellinger struck Suarez. These facts would lead a reasonable officer to be cautious of Soellinger, even though he was handcuffed. Fuhrman had a legitimate interest in ensuring the safety of the officers from a person he reasonably believed had struck Suarez, while in that person's apartment.

Reasonably believing that Soellinger had struck Suarez and that Soellinger posed a threat to the officers, Fuhrman acted reasonably in responding to Soellinger. When Soellinger stood up from the couch and yelled at the officers, interrupting their conversation, Fuhrman's rushing to him and pushing him back down onto the couch was not objectively unreasonable. Fuhrman's force was not substantial enough to do more than aggravate Soellinger's shoulder injury and cause some discomfort. There was a government interest in controlling the Defendant and quieting him down. Grabbing his arm and holding him down accomplished this purpose in a manner that did not pose a substantial risk of injury.

The case of *Smith v. City of Chicago*, 242 F.3d 737 (7th Cir. 2001), illustrates why

Soellinger cannot succeed in his claim. In that case, police officers saw the plaintiff commit a traffic violation and they turned on their sirens. The plaintiff did not pull over for 12 blocks, and when he was stopped, the officers pulled him from the car, and slammed him against the hood of the car. Judging from the perspective of the officers, the force was not unreasonable, because it was in accordance with their reasonable belief that the plaintiff was trying to flee. The plaintiff's claims that he did not hear the siren were irrelevant, because the reasonableness of the force is judged from the officer's point of view. In this case, Fuhrman knew Suarez called for backup and was told that Soellinger had struck Suarez. Though Soellinger denies that he struck Suarez, Fuhrman reasonably believed that Soellinger had been aggressive toward Suarez and was a threat to the officers, and his actions are reasonable in light of that belief.

Judged in hindsight, Fuhrman's split-second decision may have been slightly disproportionate to the potential risk, but the Court does not judge the reasonableness of an officer's force with the advantage of 20/20 hindsight. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396. Judging from the perspective of a reasonable officer in Fuhrman's position, allowing for the fact that Fuhrman had to make a split-second decision, his force was not excessive.

Because, Fuhrman did not violate Soellinger's rights under the facts alleged by Soellinger, Delong is not liable under a bystander liability theory. The City of Fort Wayne also cannot be liable without an underlying violation, and so the claims against it are dismissed. *Thurman v. Village of Homewood*, 446 F.3d 682, 686 (7th Cir. 2006)

9

**D.     Qualified Immunity**

Even if the this Court is wrong, and Fuhrman's force was objectively unreasonable, the Plaintiff cannot show that a reasonable officer would know such force to be unlawful.

Government officials, including police officers, are protected by the doctrine of qualified immunity for actions that could have been reasonably believed to be lawful in light of clearly established law. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The reasonableness of an officer's belief that his actions are legal depends on how clearly established the law is governing the officer's particular action. An officer's belief in the lawfulness of his conduct is reasonable unless pre-existing law makes the unlawfulness of the conduct apparent. *Id.* at 639–40. Even if an officer acts unlawfully, qualified immunity applies if the officer's mistake was reasonable. *Saucier v. Katz*,  533 U.S. 194, 205 (2001).

The Supreme Court has outlined a two step process to determine whether qualified immunity applies. *Id.* at 200. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If the facts show a violation of a plaintiff's constitutional rights, the court must then ask whether the specific right violated was so clearly established at the time of the conduct that the officer's mistake was unreasonable. *Id.* at 201–02. It is the plaintiff's burden to show a defendant's conduct violated clearly established law, and he may do so by offering closely analogous cases or evidence that the defendant's conduct was so obviously a violation of the Constitution that a reasonable officer would have known this without court guidance. *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993). If relying on caselaw, it is not necessary for a plaintiff to find a prior case with nearly identical facts; the plaintiff must produce case law showing the state of the law

10

at the time of the officers' conduct was such that they had fair warning their conduct violated the Constitution. *See Green v. Butler*, 420 F.3d 689, 701 (7th Cir. 2005).

Soellinger presents no cases involving similar facts. Soellinger alleges to have been an innocent citizen assaulted without any provocation. *See Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). However, Fuhrman did not have information such that he should have known Soellinger was an innocent citizen. From his perspective, he believed Soellinger had struck Suarez, and he responded to Suarez's call for backup. With this information, rushing and pushing the Plaintiff back down to the couch when he stood up and yelled at the officers was not clearly unlawful. Soellinger has not carried his burden to show that the case law is such that Fuhrman had fair warning his conduct was unlawful.

## ORDER

For these reasons, Soellinger's claims against Officers Fuhrman and Delong, and the City of Fort Wayne are DISMISSED. The Defendants' motion to strike [DE 23] is GRANTED. The Defendants' motion for summary judgment [DE 14] is GRANTED.

SO ORDERED on July 19, 2007.

                                                  s/Theresa L. Springmann
                                                  JUDGE THERESA L. SPRINGMANN
                                                  UNITED STATES DISTRICT COURT